**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IMH Special Asset NT 168 LLC,<br><br>Plaintiff,<br><br>v.<br><br>Aperion Communities LLLP, et al.,<br><br>Defendants. | No. CV-16-04164-PHX-DGC<br><br>**ORDER** |

Hart Interior Design, LLC 401(k) Profit Sharing Plan, by and through Athena Hart-Kolle, Trustee ("the Plan"), has removed a complex state receivership case from Maricopa County Superior Court to this Court. Doc. 1. The case is *IMH Special Asset NT 168, LLC v. Aperion Communities, LLLP, et al.*, No. CV2010-010990 ("the State Court Action"). Three participants in the State Court Action, IMH Special Asset NT 168, LLC, IMH Special Asset NT 161, LLC, and the Reaves Law Group, P.C. (collectively, the "Movants"), have filed a motion to remand the case to state court. Doc. 11. The motion has been briefed (Docs. 11, 28), and the Court concludes that oral argument is not necessary. For the reasons that follow, the Court will remand this case to state court.

**I.      Background.**

The State Court Action began in 2010. IMH Special Asset NT 168, LLC and IMH Special Asset NT 161, LLC (collectively, the "Judgment Creditors") are wholly owned subsidiaries of IMH Financial Corporation ("IMHFC"). Doc. 11 at 3. IMHFC is an Arizona based real estate lender and investor. *Id.* Following non-judicial foreclosures on

real property in 2010, the Judgement Creditors brought deficiency actions under A.R.S. § 33-814(a) against Aperion Communities, LLLP, Eladio Properties, LLLP, David P. Maniatis, and the DPM-TT Trust (collectively, the "Judgment Debtors"). *Id.* The deficiency actions were consolidated in the State Court Action, and, on December 21, 2012, the state court entered a multi-million dollar judgment against the Judgment Debtors. *Id.*

As Movants note and the Plan does not dispute, "[t]he original complaints did not name the Plan as a party, and the Plan did not participate – at all – in either action." *Id.* In post-judgment collection proceedings, the state court appointed two separate receivers over certain of the Judgment Debtors' assets. *Id.* at 4. Movants summarize the relevant portions of the post-judgment collection proceedings as follows:

> First, pursuant to post-judgment negotiations between Maniatis and the Judgment Creditors, Maniatis stipulated to: (i) transfer his and the DPM-TT Trust's shares of stock in closely-held corporations to Stockholder, and (ii) appoint [the Reaves Law Group as] the Stockholder Receiver pursuant to an *Order Appointing A Receiver Over Stockholder, LLC* dated and filed on June 12, 2013, in the State Court (the "**Stockholder Receivership Order**"). By virtue of the transfer of stock, Stockholder – an entity created and owned by the Judgment Creditors/IMHFC – took ownership of various closely-held corporations formerly owned by Maniatis and the DPM-TT Trust. These corporations, among other things, manage entities that own land and/or water interests in Sandoval County, NM. The Removing Party invested in some of those entities.
>
> Second, the court appointed MCA Financial Group, Ltd., by and through Keith Bierman ("**MCA Receiver**"), receiver over all other non-exempt assets owned and controlled by Maniatis and the DPM-TT Trust pursuant to an *Order Appointing A Receiver Over the DPM-TT Trust and Property Owned and Controlled by David P. Maniatis* dated August 22, 2013, as amended by the *Order Amending Order Appointing a Receiver Over the DPM-TT Trust and Property Owned and Controlled by David P. Maniatis* dated April 18, 2014 (collectively, the "**MCA Receivership Order**").
>
> As part of the administration of their respective receivership estates, the Stockholder Receiver and MCA Receiver (collectively, the "**State Court Receivers**") stepped into Maniatis' shoes to manage and, where

>appropriate, liquidate companies.  In addition to the Removing Party, over one-hundred other individual investors (the "**Individual Investors**") own limited partnership or limited liability company membership interests in the various companies subject to administration by the State Court Receivers.

Doc. 11 at 5.  The Plan does not dispute these facts.

On December 16, 2013, the Plan filed an Amended Notice of Appearance in the State Court Action.  Doc. 11-2 (giving notice of its appearance as a "Party-in-Interest").  The Plan never moved to formally intervene, but it did "file[] objections and appear[] at hearings to oppose relief sought by the Receivers."  Doc. 11 at 5.  On May 13, 2014, the state court issued an order establishing procedures and deadlines for submitting claims against the receivership estate.  Doc. 28-3.  The state court noted that these procedures and deadlines were "in the best interests of the Maniatis Entities, their creditors, interest holders and other parties in interest."  *Id.* at 3.

It is undisputed that the Stockholder Receiver controls six entities which each own a 1/6 interest in two exploratory deep groundwater wells in Sandoval County, New Mexico.  Doc. 11 at 6.  While the Plan contends that Movants have exaggerated the extent of the emergency, Movants argue that these wells are in a serious state of deterioration and actively leaking hazardous contaminants.  *Id.* at 6-7.  According to Movants, because the owners did not have money to repair the wells, IMHFC, by and through one of its subsidiaries, lent approximately $50,000 to fund temporary repairs of the wells in the summer of 2016.  *Id.* at 7.  The Plan did not attempt to remove the State Court Action at that time.

Movants filed an emergency motion with the state court on November 16, 2016 after an alleged increase in the amount of contaminated water leaking from one of the wells (*id.* at 8), and the state court set a hearing for December 2, 2016 (Doc. 28 at 10).  The emergency motion asked the state court to approve a loan from IMHFC to complete needed well repairs.  *Id.*  The Plan responded to the emergency motion by filing an objection in state court on November 25, 2016, the deadline set by the state court.  *Id.*  The objection raised the issue of complete federal preemption and the prospect of

removal. *Id.* Six days later, and one day before the emergency hearing in state court, the Plan filed its notice of removal. Doc. 1.

Days after the filing of the emergency motion, the well allegedly suffered a blowout and was discharging large amounts of contaminated water. Doc. 11 at 8. The well has been stopped with emergency but temporary repairs, funded by a good faith advance from IMHFC. *Id.* at 9. Following the notice of removal, Movants also filed their emergency motion to finance repairs with this Court. Doc. 15.

## II. Legal Standard.

Pursuant to the removal statute, 28 U.S.C. § 1441, any civil action over which the federal district courts have original jurisdiction may be removed by a defendant from state court to the federal court for the district where the action is pending. 28 U.S.C. § 1441(a). Courts strictly construe the statute against removal jurisdiction. *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). Indeed, there is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* This presumption means that the removing party always has the burden of establishing that removal is proper." *Id.*

## III. Analysis.

Federal law makes clear that only a defendant may remove a claim to federal court. 28 U.S.C.A. § 1441(a) ("any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants"); *Aref v. Holmgren*, 976 F.2d 736 (9th Cir. 1992) ("Only defendants may remove a case to federal court."). "For the purpose of removal, the federal law determines who is plaintiff and who is defendant." *Chicago, R.I. & P.R. Co. v. Stude*, 346 U.S. 574, 580 (1954).

While the Plan "does not claim to have been a party defendant to the underlying original case filed by the Judgment Creditors and in which the Judgment Creditors obtained sizeable judgments that they used to initiate the receivership[,]" it contends that it "was and is a party in the subsequent post-judgment receivership case." Doc. 28 at 3.

- 4 -

The Plan seems to argue that the state receivership is a separate case from the consolidated deficiency actions filed in 2010. *Id.* Citing the unique and "relatively undefined" Arizona post-judgment receivership process, the Plan argues that it is one of many "interested parties" that were "invite[d] to assert their rights to receivership property." *Id.* Movants argue, in contrast, that the Plan is not a named defendant and "'only a party defendant against claims asserted by a plaintiff ought to be able to remove.'" Doc. 11 at 13 (quoting 16-107 Moore's Federal Practice – Civil § 107.41 (2016)).

The Court does not find that the receivership proceedings constitute a separate case from the 2010 deficiency actions for purposes of removal. Rather, the receivership proceedings are an extension of the relief granted to the Judgment Creditors, intended to ensure the adequate provision of remedies ordered by the Court as a result of the deficiency actions. The case number and name of the State Court Action have remained constant since 2010, and the Plan does not allege that the named parties have changed. The Plan offers no authority to show that participating in the receivership proceedings is equivalent to intervening as a party – that mere participation makes the Plan a defendant in the State Court Action.[1]

The Plan argues that it is a party defendant in the State Court Action under the "functional test" established by the Supreme Court in *Mason City & Fort Dodge RR Co. v. Boynton*, 204 U.S. 570, 579-80 (1907). Doc. 28 at 5; Doc. 1, ¶ 4. According to the Plan, *Mason City* developed a test under which "federal courts will look at the reality of the dispute between the parties and the 'functional' dynamic propelling the dispute forward." Doc. 28 at 4. Because the "mainspring of the proceedings" in the state court was Movants' attempt to obtain "the approval of the financing transaction presented in the [emergency motion,]" the Plan, which objected to the emergency motion, argues that

---

[1] The Plan does cite to one Fifth Circuit case from 1937 which found that, because the appellants had filed a proof of claim in a receivership proceeding in federal court, they had intervened and were bound by the outcome of those proceedings. But the case says nothing about whether the appellants were parties for purposes of the removal statute. *Bethke v. Grayburg Oil Co.*, 89 F.2d 536, 539 (5th Cir. 1937).

it was a functional defendant and had the right to remove the case to federal court. *Id.* The Court does not agree.

In *Mason City*, the Supreme Court addressed the issue of whether a plaintiff and defendant could be realigned for purposes of removal. 204 U.S. at 579 ("It is quite conceivable that a state enactment might reverse the names which, for the purposes of removal, this court might think the proper ones to be applied."). It did not address whether a non-party may be considered a defendant entitled to remove a case to federal court. *Id.*

Whether a non-party may remove was addressed in *Anaya v. QuickTrim, LLC*, No. CV 12-1967-CAS DTBX, 2012 WL 6590825 (C.D. Cal. Dec. 17, 2012). A putative class member in *Anaya* filed a notice of removal relying on the "functional test" established in *Mason City*. *Id.*, at *2. The class member argued that she was the functional equivalent of a defendant because the named class plaintiff effectively sought to bar another class action in which she was a class member. *Id.*, at *3. The district court found, however, that *Mason City* stands for nothing more than "the proposition that in limited circumstances, state civil procedure that aligns the parties to a suit in atypical fashion may be trumped by federal law." *Id.*, at *4. Because the class member was not a party to the underlying action, there was "no 'recharacterization' for [the court] to engage in, in addition to no state law giving rise to a misalignment of parties." *Id.*

Like the class member in *Anaya*, the Plan cites no authority to show that non-parties may remove state cases to federal court. Indeed, *Anaya* noted that "[t]he case law is uniformly to the contrary." *Id.*; *see*, *e.g.*, *Am. Home Assur. Co. v. RJR Nabisco Holdings Corp.,* 70 F.Supp.2d 296, 298-99 (S.D.N.Y. 1999) ("a non-party – even one that, like Nabisco, claims to be a real party in interest – has no authority to notice removal under the statutes here utilized, 28 U.S.C. § 1441 and § 1446(a), which speak only of removal 'by the defendant or defendants.'"); *Hous. Auth. of City of Atlanta, Ga. v. Millwood,* 472 F.2d 268, 272 (5th Cir. 1973) (holding that status as a party to the state court action is a "precondition for the district court to have removal jurisdiction");

*Juliano v. Citigroup, N.A.,* 626 F. Supp. 2d 317, 319 (E.D.N.Y. 2009) (citations omitted) ("In short, a non-party lacks standing to invoke a district court's removal jurisdiction under 28 U.S.C. §§ 1441 and 1446."); *Gross v. Deberardinis,* 722 F.Supp. 2d 532, 534 (D. Del. 2010) ("Even assuming [a nonparty] is the real-party-in-interest, the Court concludes that it is not a 'defendant' within the meaning of § 1441(a), and therefore, is not entitled to remove this action."); *Sheppard v. Sheppard,* 481 F. Supp. 2d 345 (D.N.J. 2007) ("[t]o interpret 'defendant' to include non-parties would produce an absurd result and would contravene more than 65 years of jurisprudence that has only allowed removal by 'defendants' to claims asserted by a plaintiff.").

In the absence of authority suggesting that the Plan can avail itself of removal procedures, the Court must remand. As noted above, there is a strong presumption against removal, and federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Gaus*, 980 F.2d at 566. This policy seems particularly relevant in a complex state proceeding that has been pending in Maricopa County Superior Court for six years and involves unique issues of state receivership law.

In light of this conclusion, the Court need not address other issues raised by the motion to remand. The Court notes, however, that there also appear to be serious questions of whether the Plan's attempted removal was timely and whether it should have been joined by all other interested parties.

**IT IS ORDERED:**

1. Movants' motion to remand (Doc. 11) is **granted.**

2. The hearing set for December 22, 2016 at 10:00 a.m. is **vacated**.

3. The Clerk shall remand this case to Maricopa County Superior Court.

Dated this 20th day of December, 2016.

_____
David G. Campbell
United States District Judge